1  MEREDITH N. LANDY (S.B. #136489)
   PETER T. SNOW (S.B. #222117)
2  O'MELVENY & MYERS LLP
   2765 Sand Hill Road
3  Menlo Park, California  94025
   Telephone:   (650) 473-2600
4  Facsimile:    (650) 473-2601
   Email:         mlandy@omm.com
5                      psnow@omm.com

6  Attorneys for Defendants
   Rackable Systems, Inc., Thomas K. Barton, Madhu
7  Ranganathan and Todd R. Ford

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE RACKABLE SYSTEMS, INC. SECURITIES LITIGATION | Case No. C-09-0222-CW |
| | <u>CLASS ACTION</u> |
| THIS DOCUMENT RELATES TO: ALL ACTIONS. | **REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| | Date:  November 19, 2009<br>Time:  2:00 p.m.<br>Courtroom: 2, 4th Floor |

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION .................................................................................................................... 1

ARGUMENT ............................................................................................................................ 2

    I.    THE COMPLAINT FAILS TO MEET THE HEIGHTENED PLEADING REQUIREMENTS FOR FALSITY .......................................................................... 2

        A.    The PSLRA's Safe Harbor And The Bespeaks Caution Doctrine Immunize Defendants' Projections And Forward-Looking Statements ............................................................................................... 2

        B.    The Complaint Does Not Plead With Particularity That Any Statement Regarding Rackable's Internal Controls Was False Or Misleading ................................................................................................ 4

        C.    The Complaint Does Not Plead With Particularity That Any Statement Regarding Rackable's Sales And Use Tax Liability Was False Or Misleading ............................................................................... 5

        D.    The Complaint Does Not Plead With Particularity That Any Statement Regarding Rackable's Inventory Reserves Was False Or Misleading ................................................................................................ 6

    II.    THE COMPLAINT FAILS TO SATISFY THE HEIGHTENED PLEADING STANDARD FOR SCIENTER ........................................................... 8

        A.    The Complaint's Confidential Witnesses Do Not Support Any Inference of Scienter ............................................................................... 8

        B.    The Absence Of Any Motive To Commit Fraud Further Undermines Plaintiffs' Scienter Allegations ............................................ 10

        C.    The Individual Defendants' Departures From Rackable Do Not Support Any Inference of Scienter .............................................. 12

        D.    The Core Business Doctrine Does Not Apply ........................................ 13

    III.    THE COMPLAINT DOES NOT PLEAD LOSS CAUSATION ........................ 14

CONCLUSION ...................................................................................................................... 15

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Beightol v. Navarre Corp., Inc.*,
   No. CIV. A. 4:08CV00010DP, 2009 WL 169069 (S.D. Miss. Jan. 26, 2009) ....................... 12

*Belodoff v. Netlist, Inc.*,
   No. SACV0700677 DOC MLGx, 2009 WL 2777320 (C.D. Cal. Sept. 1, 2009).................... 6

*Berson v. Applied Signal Tech., Inc.*,
   527 F.3d 982 (9th Cir. 2008)................................................................................ 9, 10, 13, 14

*Brodsky v. Yahoo! Inc.*,
   No. C 08-02150 CW, 2009 WL 1766002 (N.D. Cal. June 18, 2009)...................................... 9

*Florida State Bd. of Admin. v. Green Tree Financial Corp.*,
   270 F.3d 645 (8th Cir. 2001).................................................................................................. 12

*Gord v. Comm. of Internal Rev.*,
   93 T.C. 10 (1989) .................................................................................................................... 5

*Harris v. Ivax Corp.*,
   182 F.3d 799 (11th Cir. 1999)................................................................................................. 3

*Hess v. Am. Physicians Capital, Inc.*,
   No. 5:04-CV-31, 2005 WL 459638 (W.D. Mich. Jan. 11, 2005) ............................................ 3

*In re Apple Computer Sec. Litig.*,
   886 F.2d 1109 (9th Cir. 1989)................................................................................................ 10

*In re Convergent Tech. Sec. Litig.*,
   948 F.2d 507 (9th Cir. 1991).................................................................................................... 5

*In re Copper Mountain Sec. Litig.*,
   311 F. Supp. 2d 857 (N.D. Cal. 2004) .................................................................................... 3

*In re Cornerstone Propane Partners, L.P. Sec. Litig.*,
   355 F. Supp. 2d 1069 (N.D. Cal. 2005) ................................................................................. 13

*In re Cylink Sec. Litig.*,
   178 F. Supp. 2d 1077 (N.D. Cal. 2001) ................................................................................. 15

*In re Daou Sys. Sec. Litig.*,
   411 F.3d 1006 (9th Cir. 2005)................................................................................................ 14

*In re Digi Intern., Inc. Sec. Litig.*,
   6 F. Supp. 2d 1089 (D. Minn. 1998) ...................................................................................... 12

*In re Genentech, Inc. Sec. Litig.*,
   No. C 88-4038 DLJ, 1990 WL 32070 (N.D. Cal. Jan. 19, 1990) ............................................ 7

*In re Intelligroup Sec. Litig.*,
   527 F. Supp. 2d 262 (D.N.J. 2007) .......................................................................................... 5

*In re JDS Uniphase Corp. Sec. Litig.*,
   No. C 02-1486 CW, 2005 WL 1705766 (N.D. Cal. July 21, 2005) ...................................... 14

*In re Kindred Healthcare Inc. Sec. Litig.*,
   299 F. Supp. 2d 724 (W.D. Ky. 2004) .................................................................................... 3

# TABLE OF AUTHORITIES
(cont'd)

**Page**

*In re OCA, Inc. Sec. & Deriv. Litig.*,
 No. 05-2165, 2006 WL 3747560 (E.D. La. Dec. 14, 2006)............................................... 9, 10

*In re SeeBeyond Tech. Corp. Sec. Litig.*,
 266 F. Supp. 2d 1150 (C.D. Cal. 2003) ................................................................................... 3

*In re Silicon Graphics Sec. Litig.*,
 183 F.3d 970 (9th Cir. 1999)................................................................................................. 10

*In re Silicon Storage Tech., Inc.*,
 No. C 05-0295 PJH, 2006 WL 648683 (N.D. Cal. Mar. 10, 2006) .......................................... 9

*In re Syncor Int'l Corp. Sec. Litig.*,
 327 F. Supp. 2d 1149 (C.D. Cal. 2004) ................................................................................... 9

*In re Tellium, Inc. Sec. Litig.*,
 No. Civ. A. 02CV5878 FLW, 2005 WL 2090254 (D.N.J. Aug. 26, 2005) ........................... 15

*In re U.S. Aggregates, Inc. Sec. Litig.*,
 No. C 01-1688 CW, 2003 WL 252138, at *3 (N.D. Cal. Jan. 24, 2003) ........................ 12, 13

*In re UTStarcom, Inc. Sec. Litig.*,
 617 F. Supp. 2d 964 (N.D. Cal. 2009) ................................................................................. 3, 4

*In re Vantive Corp. Sec. Litig.*,
 283 F.3d 1079 (9th Cir. 2002)............................................................................................... 11

*In re Wet Seal, Inc. Sec. Litig.*,
 518 F. Supp. 2d 1148 (C.D. Cal. 2007) ................................................................................... 6

*Indiana State Dist. Council of Laborers and Hod Carriers Pension and Welfare
 Fund v. Omnicare, Inc.*,
 527 F. Supp. 2d 698 (E.D. Ky. 2007) ..................................................................................... 8

*McCasland v. FormFactor Inc.*,
 No. C-07-5545 SI, 2009 WL 2086168 (N.D. Cal. July 14, 2009) ....................................... 6, 9

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*,
 540 F.3d 1049 (9th Cir. 2008)............................................................................... 2, 10, 14, 15

*Morgan v. AXT, Inc.*,
 No. 04-4362 MJJ, 2005 WL 2347125 (N.D. Cal. Sept. 23, 2005) .......................................... 6

*No. 84 Employer-Teamster Joint Council Pension Trust Fund v. America West
 Holding Corp.*,
 320 F.3d 920 (9th Cir. 2003)................................................................................................. 12

*Novak v. Kasaks*,
 216 F.3d 300 (2d Cir. 2000).................................................................................................... 7

*Plevy v. Haggerty*,
 38 F. Supp. 2d 816 (C.D. Cal. 1998)....................................................................................... 7

*Ronconi v. Larkin*,
 253 F.3d 423 (9th Cir. 2001)................................................................................................. 10

*Rothman v. Gregor*,
 220 F.3d 81 (2d Cir. 2000)...................................................................................................... 7

## **TABLE OF AUTHORITIES**
(cont'd)

**Page**

*South Ferry LP v. Killinger*,
  542 F.3d 776 (9th Cir. 2008) .................................................................................................. 13

*T.J. Raney & Sons, Inc. v. Fort Cobb, Okla. Irrigation Fuel Auth.*,
  717 F.2d 1330 (10th Cir. 1983) .............................................................................................. 11

*Tellabs, Inc. v. Makor Issues & Rights, Ltd*,
  127 S. Ct. 2499 (2007) ........................................................................................................... 14

*Thornton v. Micrografx, Inc.*,
  878 F. Supp. 931 (N.D. Tex. 1995) ........................................................................................ 11

*Zucco Partners LLC v. Digimarc Corp.*,
  552 F.3d 981 (9th Cir. 2009) ................................................................................................... 9

### **STATUTES**

15 U.S.C. § 78u-5(i)(1)(A) ........................................................................................................ 2, 3

17 C.F.R. § 229.303(a)(3)(ii) ......................................................................................................... 6

**INTRODUCTION**

The Complaint's central premise is that Rackable's 4Q06 financial projections were fraudulent when made. Plaintiffs, however, cannot overcome the PSLRA's safe harbor and the bespeaks caution doctrine, both of which protect forward-looking statements so long as they are accompanied by meaningful cautionary language. Plaintiffs sidestep this obstacle and instead offer a half-hearted argument that some or all of the statements are written in the present tense and therefore are not "forward-looking." The Opposition, however, fails to identify a single statement of current fact alleged in the Complaint. Plaintiffs then contend that all of Rackable's forward-looking statements were made with actual knowledge of falsity. But even if plaintiffs had alleged sufficiently particularized and contemporaneous facts demonstrating that any defendant had knowledge that Rackable's projections were false when made, plaintiffs still cannot avoid the PSLRA's safe harbor. The statute makes clear that the "actual knowledge" standard is only relevant if a forward-looking statement is not accompanied by meaningful cautionary language -- a proposition that plaintiffs do not effectively challenge either factually or legally. As a result, the safe harbor slams the door on all of plaintiffs' allegations.

Plaintiffs then proceed to argue as if the PSLRA safe harbor does not exist. They contend that Rackable's projections were false when made because defendants knew that Rackable's internal controls were insufficient, that inventory should have been written off sooner, and that Rackable needed to collect unpaid sales and use tax from its customers. But even before the class period began, Rackable disclosed its unpaid sales and use tax liability and the risks associated with its inventory procurement system. The defendants explicitly warned the market that it might need to take an inventory write-down on certain of its key components, such as DRAM chips. And it never restated any of its financial results, undermining any suggestion by plaintiffs that Rackable violated GAAP and SEC rules or "fraudulently failed to restate its financials."

Not only are plaintiffs unable to plead falsity of any challenged statement, they fall far short of alleging the strong inference of scienter required by the PSLRA. Four of the Complaint's six CWs were not even employed by Rackable during the Class Period and none of them are alleged to have any information inconsistent with Rackable's public statements, much less to

have communicated such information to defendants. The Complaint's purported motive allegations are plainly insufficient: only one defendant sold stock during the Class Period, and neither the defendants' compensation packages nor their post-Class Period resignations are sufficiently particularized or remarkable to meet the PSLRA's heightened standards.

The Complaint also must be dismissed because it fails to allege loss causation. Plaintiffs must allege "that the practices that the plaintiff contends are fraudulent were revealed to the market and caused the resulting losses." *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1063 (9th Cir. 2008). Here, the Complaint's conclusory allegation that a "steep drop" followed the disclosure of Rackable's "true financial condition" does not meet this standard.

## ARGUMENT

### I. THE COMPLAINT FAILS TO MEET THE HEIGHTENED PLEADING REQUIREMENTS FOR FALSITY

#### A. The PSLRA's Safe Harbor And The Bespeaks Caution Doctrine Immunize Defendants' Projections And Forward-Looking Statements

As defendants demonstrated in their opening brief, the Complaint should be dismissed because each of defendants' projections and other forward-looking statements are inactionable under the PSLRA's safe harbor and the bespeaks caution doctrine. Plaintiffs relegate their response to this dispositive argument to a one-page rejoinder, which is long on rhetoric but very short on meaningful argument.

The Opposition first asserts the truism that "present tense" statements regarding past conduct and its possible "effect on the corporation" are not forward-looking statements, but fails to identify a single alleged misstatement of current fact. Opp. 21-22. To the contrary, Rackable's 4Q06 and 2007 financial guidance fall squarely within the statutory definition of forward-looking statements because they contain "a projection of revenues, income (including income loss), earnings (including earnings loss) per share, capital expenditures, dividends, capital structure, or other financial items." 15 U.S.C. § 78u-5(i)(1)(A). Rackable's statements regarding sales and use tax liability and inventory reserves are also necessarily forward-looking because "the truth or falsity of the statement[s] cannot be discerned until some point in time after the statement is made." *In re Copper Mountain Sec. Litig.*, 311 F. Supp. 2d 857, 880 (N.D. Cal. 2004) (citation

1 omitted); *accord Harris v. Ivax Corp.*, 182 F.3d 799, 806 (11th Cir. 1999) (statements about

2 adequacy of reserves are forward-looking); *Hess v. Am. Physicians Capital, Inc.*, No. 5:04-CV-

3 31, 2005 WL 459638, at *8 (W.D. Mich. Jan. 11, 2005) (same); *In re Kindred Healthcare Inc.*

4 *Sec. Litig.*, 299 F. Supp. 2d 724, 738 (W.D. Ky. 2004) (same).

5     Plaintiffs also assert that defendants' statements are not protected by the safe harbor

6 because they were made with "actual knowledge" of their falsity. This argument is flawed on two

7 grounds. First, a court must dismiss claims related to forward-looking statements if either of two

8 independent bases is met: (1) such statements are accompanied by meaningful cautionary

9 language, *or* (2) such statements are not made with actual knowledge of their falsity. *See* 15

10 U.S.C. § 78u-5(c)(1). "[T]hese two prongs of the safe harbor provision are taken to be

11 independent, alternative means by which a defendant may insulate itself from liability." *In re*

12 *SeeBeyond Tech. Corp. Sec. Litig.*, 266 F. Supp. 2d 1150, 1164 (C.D. Cal. 2003). Thus, if a

13 forward-looking statement is accompanied by meaningful cautionary language, the defendant's

14 state of mind is irrelevant. *See Harris*, 182 F.3d at 803.

15     All defendants' forward looking statements were accompanied by meaningful cautionary

16 language. *See* RJN Ex. 6, Ex. 23, Ex. 5, Ex. 10, Ex. 24, Ex. 9, Ex. 11, and Ex. 12. Plaintiffs

17 assert that defendants failed to disclose the risks associated with charging sales tax, the

18 implementation of Rackable's new ERP system, and its inventory procurement system. Opp. 22.

19 To the contrary, Rackable routinely identified each of these factors as a risk to its business and

20 financial results. *See*, *e.g.*, RJN Ex. 1 at 21, 22, 27-28; Ex. 7 at 31-32, 36-37, 39. Because

21 defendants' forward-looking statements were accompanied by meaningful cautionary language,

22 the "actual knowledge" prong does not come into play. *In re Copper Mountain*, 311 F. Supp. 2d

23 at 882. And even if it did, as shown in Section II, the Complaint does not plead scienter, much

24 less "actual knowledge" of falsity.[1]

---

25 [1] Plaintiffs attempt to analogize this case to *UTStarcom*, where the court found that the defendants
26 were aware of material, undisclosed facts that contradicted their public statements. Opp. at 1
(citing *In re UTStarcom, Inc. Sec. Litig.*, 617 F. Supp. 2d 964, 972 (N.D. Cal. 2009)). The
27 complaint in *UTStarcom*, however, alleged the defendants made statements about the strength of
the current demand for UTStarcom's products at a time when they were aware the company was
28 experiencing declining demand for specific products, declining margins, operational difficulties,

- 3 - REPLY ISO MOTION TO DISMISS
CASE NO. C-09-0222-CW

**B.     The Complaint Does Not Plead With Particularity That Any Statement Regarding Rackable's Internal Controls Was False Or Misleading**

The Opposition asserts that defendants mischaracterized Rackable's internal controls by making the following statement on the company's 3Q06 earnings conference call: "[W]e have also seen very strong bookings momentum in the last 60 days, and we see enough clearly identified demand that we're increasing Q4 estimates." Am. Compl. ¶ 89. This assertion is flawed for several reasons. First, the challenged statement has nothing to do with Rackable's internal controls, but is fundamentally a forecast of future demand for Rackable's products. To that extent, it is protected by the PSLRA's safe harbor along with defendants' other forward-looking statements. *See* Section I.A., *supra*. To the extent it relates to "very strong bookings momentum in the last 60 days," the Complaint alleges no facts suggesting that the Company was not in fact experiencing strong bookings during that time period. Opp. 17.

Even if the challenged statement could be read to have any bearing on Rackable's internal controls, the Complaint does not contain any allegations showing that, at the time of the earnings call, Rackable's internal controls were not reliable. To the contrary, defendants disclosed on the same earnings call that Rackable had just implemented its ERP system, supporting the more plausible inference that defendants believed at that time that the new system was effective. In any event, The Complaint contains no allegations that defendants' statement about then-current bookings, which informed its projections of future demand, was derived from Rackable's ERP system or was inaccurate in any respect.

Finally, to show falsity, plaintiffs rely on announcements months and years later that Rackable would no longer issue quantitative quarterly forecasts and that it was making improvements to its ERP system. *See* Opp. 17 (citing Compl. ¶ 136). Plaintiffs claim this is an

---

and increased costs. *Id.* Here, Rackable's financial guidance for 4Q06 was disclosed at the same time that Rackable reported that total revenue for the first three quarters of 2006 was up 92% from the previous year and that its non-GAAP gross margin for 3Q06 was within its projections. *See* RJN Ex. 6, Ex. 23 at 2. Plaintiffs have alleged no facts disputing these robust revenue figures. In addition, because the court in *UTStarcom* explicitly declined to address whether the PSLRA safe harbor protected defendants' statements from liability, the decision has no bearing on the applicability of the safe harbor here. 617 F. Supp. 2d at 972 n.12.

- 4 -

REPLY ISO MOTION TO DISMISS
CASE NO. C-09-0222-CW

admission that Rackable never had visibility into its revenue stream during the Class Period. Such an opportunistic attempt to use post-hoc events to demonstrate falsity is unavailing. *See In re Intelligroup Sec. Litig.*, 527 F. Supp. 2d 262, 335 (D.N.J. 2007) (upgrade to financial system is not admission that past internal controls were inadequate). Because plaintiffs' assertions are not supported by contemporaneous facts contradicting defendants' statements, they must be rejected.

### C. The Complaint Does Not Plead With Particularity That Any Statement Regarding Rackable's Sales And Use Tax Liability Was False Or Misleading

The Opposition asserts that Rackable should have disclosed, in advance, that it would begin charging sales tax to its customers in 4Q06 based on plaintiffs' assumption that this practice caused Rackable to miss its financial guidance for the quarter. The Complaint does not contain any allegations demonstrating that sales tax charges impacted Rackable's gross margins at any time during the Class Period. In any event, Rackable disclosed in its 2005 10-K, filed on February 22, 2006, that it was liable for unpaid sales and use tax and that it was going back to its customers to collect it. RJN Ex. 1. By the time the Class Period began on October 30, 2006, Rackable was well along in this process and had revised up its receivable for unpaid sales tax to $4.4 million. Under these circumstances, the more plausible inference is that Rackable's customers knew they were responsible for sales tax from the beginning of the Class Period onward, and had already incorporated it into Rackable's pricing.

The Opposition also suggests that Rackable should have disclosed that sales tax charges could have a negative impact on its ability to compete. Opp. 17. Rackable fully disclosed its sales tax liability and the risk that it might not be able to collect unpaid sales tax from its customers. RJN Exs. 1, 4, 7, 11. It was not required to further disclose every potential consequence of sales tax charges, especially those obvious to a reasonable investor. *See In re Convergent Tech. Sec. Litig.*, 948 F.2d 507, 513 (9th Cir. 1991) (market "clearly knew demand for the . . . workstation would decrease" as defendant began to make the new model available).

Plaintiffs' assertion that Rackable violated Regulation S-K has no merit. Opp. 19-20. Plaintiffs accuse Rackable of violating Item 303(a)(3)(ii), which requires issuers to describe ***in their annual statements*** "any known trends or uncertainties that have had or that the registrant

1   reasonably expects will have a material favorable or unfavorable impact on net sales or revenues
2   or income from continuing operations." Opp. 19 (citing 17 C.F.R. § 229.303(a)(3)(ii)). As the
3   Complaint acknowledges, Rackable disclosed in its 2005 10-K that it was liable for unpaid sales
4   and use tax and that it was going to collect it from its customers. Rackable then disclosed in its
5   2006 10-K that it "started billing sales taxes to its customers." Am. Compl. ¶ 154. Plaintiffs
6   assert that Rackable also should have disclosed this information in its 3Q06 10-Q, but Item 303
7   does not require companies to discuss to such future events in quarterly reports. *See* 17 C.F.R. §
8   229.303(b)(1); *see also Belodoff v. Netlist, Inc.*, No. SACV0700677 DOC MLGx, 2009 WL
9   2777320, at \*9 (C.D. Cal. Sept. 1, 2009).

### D. The Complaint Does Not Plead With Particularity That Any Statement Regarding Rackable's Inventory Reserves Was False Or Misleading

Plaintiffs assert that Rackable violated GAAP because it allegedly should have written off approximately $20.6 million in inventory by December 31, 2006, instead of six months later, in 2Q07. Opp. 18. The Opposition fails to cite any facts inconsistent with Rackable's accounting for its inventory, much less sufficient facts to plead any violation of GAAP. *See In re Wet Seal, Inc. Sec. Litig.*, 518 F. Supp. 2d 1148, 1162 (C.D. Cal. 2007) (dismissing allegation that assets should have been impaired earlier where complaint "contains no facts showing that [defendant]'s estimates of income from the assets in question . . . were less than their carrying value, or that [defendant]'s estimates were unfounded"); *Morgan v. AXT, Inc.*, No. 04-4362 MJJ, 2005 WL 2347125, at \*14-15 (N.D. Cal. Sept. 23, 2005) (rejecting allegation that reserves were fraudulently understated because plaintiff "alleges no contemporaneous facts to support that contention other than the post-Class Period decision to increase the reserves").

The Opposition refers to CW1 and CW2, but they are, at most, alleged to have seen "a lot of excess inventory" at Rackable. Am. Compl. ¶ 264(d). Such vague allegations do not establish that Rackable failed to reserve for excess inventory appropriately during the class period or that the decision to write off inventory in 2Q07 should have been made any earlier. *McCasland v. FormFactor Inc.*, No. C-07-5545 SI, 2009 WL 2086168, at \*5 (N.D. Cal. July 14, 2009) (dismissing complaint without leave to amend where it did not allege "that CW14, or any other

- 6 -                         REPLY ISO MOTION TO DISMISS
                              CASE NO. C-09-0222-CW

1  CW, provided any *specific* information to defendants that contradicts any public statement made
2  by defendants, or that any defendant received such information by an email, or internal
3  memorandum or report").

4  Plaintiffs argue that the magnitude of Rackable's write-off in 2Q07 is sufficient in itself to
5  show that Rackable's prior reserves were fraudulently understated. Opp. 18-19. The cases cited
6  by plaintiffs, however, hold that allegations of improper accounting treatment alone are ***not***
7  sufficient to state a claim for securities fraud. *See Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir.
8  2000) ("[A]llegations of GAAP violations or accounting irregularities" are sufficient to plead
9  scienter only where "coupled with evidence of corresponding fraudulent intent."); *Rothman v.
10 Gregor*, 220 F.3d 81, 98 (2d Cir. 2000) (allegation that defendant violated various GAAP
11 provisions is not sufficient to state a securities fraud claim without additional allegations of
12 "corresponding fraudulent intent"); *In re Genentech, Inc. Sec. Litig.*, No. C 88-4038 DLJ, 1990
13 WL 32070, at *4 (N.D. Cal. Jan. 19, 1990) ("Thus instead of merely alleging certain accounting
14 irregularities, plaintiffs' complaint includes allegations of specific misrepresentations and other
15 facts that give rise to a reasonable inference of scienter."). The Amended Complaint alleges
16 neither any accounting violation by Rackable nor the corresponding fraudulent intent required to
17 state a claim for securities fraud.

18 Nor are plaintiffs correct that Rackable never explained the accounting treatment for its
19 inventory. Opp. 19:8-10. As alleged in the Complaint, on several occasions defendants warned
20 investors that Rackable was holding its inventory of DDR1 memory chips for anticipated
21 customer orders, but that if the "technology shift happen[s] sooner than anticipated," a write off
22 would be required. *See, e.g.*, Compl. ¶¶ 151, 175, 177. Rackable disclosed three reasons for its
23 write down of inventory in 2Q07: (i) a "significant reduction in our forecasted usage for the next
24 twelve months," (ii) a "customer driven, technology platform shift from AMD to Intel," and (iii)
25 "lower than expected revenue from 2007 and a shift in customer preference to next generation
26 power supplies created an excess in power supplies on hand." RJN Ex. 18 at 20-21. Plaintiffs
27 have not alleged with particularity any facts refuting this explanation. *See Plevy v. Haggerty*, 38
28 F. Supp. 2d 816, 829 (C.D. Cal. 1998) (rejecting allegation that $148 million charge should have

been take earlier where defendant's explanation for charge was "undisputed" and plaintiff's argument is "merely a conclusion lacking any factual support").

The Opposition's bare assertion that Rackable "knowingly failed to restate its financials" is contradicted by the fact that Rackable's independent auditor reviewed Rackable's financial statements and never concluded that they violated GAAP or should be restated. *See Indiana State Dist. Council of Laborers and Hod Carriers Pension and Welfare Fund v. Omnicare, Inc.*, 527 F. Supp. 2d 698, 707 (E.D. Ky. 2007) (dismissing securities fraud claim premised on allegedly false financial statements and violations of GAAP, where company never restated). Plaintiffs therefore assert nothing more than a *post hoc* conclusion that the Company somehow fraudulently failed to restate, without any facts alleging a reasoned basis for any such restatement.

## II. THE COMPLAINT FAILS TO SATISFY THE HEIGHTENED PLEADING STANDARD FOR SCIENTER

### A. The Complaint's Confidential Witnesses Do Not Support Any Inference of Scienter

The statements attributed to the Complaint's confidential witnesses are so deficient that the Opposition devotes far more effort to asserting legal arguments for their relevance than to identifying the specific allegations that purportedly demonstrate fraudulent intent. Even taken at face value, they do not contribute to any inference of scienter.

The Opposition asserts in a footnote that CW1, CW2 and CW3 allegedly stated that Rackable had excess inventory at unspecified times before and during the Class Period, while also lacking certain components necessary to meet customer demand. Opp. 9 n.12 (citing Compl. ¶¶ 263-265). These vague allegations do not support any inference that Rackable's financial statements were inaccurate, much less that the individuals who created them acted with fraudulent intent. The same is true of the allegation that as late as June 2006, CW4 was aware of purchase orders "where sales tax was not being charged to customers" and that CW4 was "never asked to recover sales tax from customers." Opp. 10 (citing Compl. ¶ 266). There is no indication of the magnitude of these purchase orders and no facts showing that they were not accounted for in Rackable's $4.4 million reserve for unpaid sales and use tax. *See* RJN Ex. 7. Finally, the

1  Opposition points to CW6's statement that in 2008 and 2009, "higher expedited costs [to obtain

2  inventory for immediate customer needs] were not passed on to the customers." Opp. 10 (citing

3  Compl. ¶ 268). There are no allegations linking this statement to Rackable's billing practices

4  during the Class Period more than a year earlier. Moreover, Rackable repeatedly disclosed to

5  investors the risks of its inventory procurement system. *See*, *e.g.*, RJN Ex. 4 at 28.

6  Plaintiffs' own case law fails to support their assertion that CW1, CW3, CW5 and CW6,

7  who were not employed at Rackable during the Class Period, offer any relevant facts relating to

8  the issue of scienter. *See* Opp. 9 (citing *In re Syncor Int'l Corp. Sec. Litig.*, 327 F. Supp. 2d 1149,

9  1160 (C.D. Cal. 2004)). A complaint must contain particularized allegations tying a confidential

10  witness's statement to specific conduct during the class period. In *Syncor*, the court held that

11  information regarding a pre-class period meeting was relevant to scienter because during the

12  meeting an individual defendant allegedly discussed a scheme to increase the company's sales by

13  bribing doctors -- the same scheme that defendants were accused of perpetrating during the Class

14  Period. *Id.* at 1160. Here, none of the confidential witnesses is alleged to have evidence of a

15  continuing "scheme," or to have even attended a meeting with an individual defendant. *See*

16  *McCasland v. FormFactor, Inc.,* No. C 07-5545 SI, 2008 WL 2951275, at *8 (N.D. Cal. July 25,

17  2008) (confidential witnesses who had no interaction with any defendant did not support

18  inference of scienter); *see also Zucco Partners LLC v. Digimarc Corp.*, 552 F.3d 981, 996 (9th

19  Cir. 2009); *Brodsky v. Yahoo! Inc.*, 630 F. Supp. 2d 1104, 1115 (N.D. Cal. 2009); *In re Silicon

20  Storage Tech., Inc*., No. C 05-0295 PJH, 2006 WL 648683, at *10 (N.D. Cal. Mar. 10, 2006).

21  The Court should also reject plaintiffs' assertion that due to Rackable's "small size," the

22  confidential witnesses need not have been involved with inventory accounting or internal controls

23  to opine on them. Opp. 9 (citing *In re OCA, Inc. Sec. & Deriv. Litig.*, No. 05-2165, 2006 WL

24  3747560, at *18 (E.D. La. Dec. 14, 2006); *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982,

25  985 (9th Cir. 2008)). This assertion is merely an attempt to circumvent the PSLRA's requirement

26  that plaintiffs must "allege with particularity facts supporting its assumptions that the confidential

27  witnesses were in a position to be personally knowledgeable of the information alleged." *See*

28  *Zucco Partners*, 552 F.3d at 987-88. The Complaint does not allege that any confidential witness

1  was in a position to know what information was provided to senior management. Plaintiffs
2  mischaracterize both *Berson* and *OCA* by suggesting that the confidential witnesses' statements
3  were deemed relevant in those cases based on the size of the companies involved. In both cases,
4  the prominence of the alleged fraud was the determining factor in the courts' consideration of the
5  confidential witnesses' relevance and whether defendants acted with scienter. *See Berson*, 527
6  F.3d at 985 (stop-work orders had such "devastating effect" on the company's revenue that it
7  would be "absurd" to suggest that management was unaware of them); *OCA*, 2006 WL 3747560,
8  at *18 (confidential witnesses reported errors regarding company's "most significant asset"
9  representing "60 percent of the company's entire asset pool"). Here, the purported "fraud" relates
10 to missed projections, not the type of widespread fraud where courts have inferred scienter.

### B.  The Absence Of Any Motive To Commit Fraud Further Undermines Plaintiffs' Scienter Allegations

Plaintiffs ask this Court to defy longstanding Ninth Circuit precedent by inferring scienter from stock sales that occurred before the Class Period and ignoring that only one defendant, Ford, is alleged to have sold any stock during the Class Period. *Cf.* Opp. 12-13 and *Metzler*, 540 F.3d at 1066-67 (stock sales only support an inference of scienter when "dramatically out of line with prior trading practices at times calculated to maximize the personal benefit from undisclosed inside information."); *Ronconi v. Larkin*, 253 F.3d 423, 436 (9th Cir. 2001) (finding "only a weak inference" of scienter where "other, equally knowledgeable, insiders" sold too soon to take advantage of allegedly fraudulent statements); *In re Silicon Graphics Sec. Litig.*, 183 F.3d 970, 987 (9th Cir. 1999) (no strong inference of scienter where defendants "retained 90 percent of their available holdings" during class period); *In re Apple Computer Sec. Litig.*, 886 F.2d 1109, 1117 (9th Cir. 1989) ("Large sales of stock *before* the class period are inconsistent with plaintiffs' theory that defendants attempted to drive up the price of Apple stock *during* the class period."). And as plaintiffs concede, Ford actually sold more stock ***before*** the Class Period than he did ***during*** the Class Period. Opp. 13 n. 21. Plaintiffs' suggestion that the Court should interpret the securities laws "flexibly and progressively" to find an inference of scienter where there is none should be rejected. Opp. 13 (quoting *T.J. Raney & Sons, Inc. v. Fort Cobb*, *Okla. Irrigation Fuel*

1  *Auth.*, 717 F.2d 1330, 1331 (10th Cir. 1983)).

2  The Opposition asserts that defendants' pre-Class Period sales are relevant because they were part of a scheme to cash in on the competitive advantage that Rackable allegedly held by not charging sales tax. Opp. 12-13. The vast majority of these sales were made by Barton and Ford following Rackable's IPO. The Complaint does not allege a single fact showing that Rackable's stock was fraudulently inflated at that time. Compl. ¶¶ 285-87. Scienter cannot be inferred from an illogical theory that defendants would sell substantial amounts of stock when the stock price was not inflated, but then hold their stock while engaging in a fraudulent scheme to drive up its price. *See, e.g.*, *Thornton v. Micrografx, Inc.*, 878 F. Supp. 931, 938 (N.D. Tex. 1995) (rejecting allegation that defendants would "expend so much time and effort to conceal facts and misrepresent information" and then hold their stock during the class period).

Plaintiffs argue that the stock sales of William Garvey, Rackable's former General Counsel, suggest scienter because he signed three Form 8-Ks during the Class Period. Opp. 13 n. 20 (citing Compl. ¶¶ 123, 128, 171). Because Garvey is not a defendant and is not alleged to have made any false statements, his stock sales do not support any inference of scienter. *See Silicon Graphics,* 183 F.3d at 987-88; *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1095 (9th Cir. 2002). Plaintiffs cite no authority showing that signing a Form 8-K is tantamount to making a false statement under the securities laws. Nor do they explain why Garvey's stock sales are more suggestive of scienter than the lack of sales by the individual defendants themselves.

Plaintiffs' assertion that the individual defendants' compensation packages were "extraordinary by any measure" is not supported by the Complaint. *Cf.* Opp. 14 and Compl. ¶ 274-80. The individual defendants' compensation included a combination of salary, cash bonus and stock option awards with the stated purpose of aligning the "short- and long-term interests of Rackable Systems' executives with that of its stockholders." Compl. ¶ 279; *see also* Compl. ¶ 274. There is nothing remarkable about the type or amount of compensation paid to the individual defendants, in stark contrast to the compensation packages at issue in the case law

plaintiffs cite.[2]  Moreover, to the extent plaintiffs suggest that defendants' stock option awards motivated them to commit fraud, their lack of stock sales sharply undermines their argument.

Plaintiffs also assert that defendants were motivated to commit fraud to remain in compliance with Rackable's loan covenants under its line of credit.  Opp. 15 (citing Compl. ¶¶188, 281-84.).  Confronted with the fact that Rackable never had any borrowings under this line of credit during the Class Period, plaintiffs assert that the mere existence of the loan covenant alone is enough to support an inference of scienter.  See RJN Ex. 7 at 18, Ex. 11 at 49, Ex. 15 at 17; *see also* Opp. 16 (citing *In re U.S. Aggregates, Inc. Sec. Litig.*, No. C 01-1688 CW, 2003 WL 252138, at *3 (N.D. Cal. Jan. 24, 2003)).  In *U.S. Aggregates*, the court held that defendants' motive to prevent default under loan covenants could support an inference of scienter where the company ***already had existing loans under the line of credit*** and two confidential witnesses indicated that defendants "***needed to inflate revenues in order to obtain additional loans necessary to fund the on-going activities of the business***."  2003 WL 252138, at *3-*4 (emphasis added).  There are no such allegations here; to the contrary, it is undisputed that Rackable did not draw down on its line of credit during the Class Period.

### C. The Individual Defendants' Departures From Rackable Do Not Support Any Inference of Scienter

Plaintiffs argue that the resignations of the individual defendants and General Counsel support a "strong showing" of scienter.  Opp. 15:7.  Resignations, however, are not indicative of scienter unless accompanied by additional allegations showing that they were related to some relevant wrongdoing during the Class Period.  *See*, *e.g.*, *In re Cornerstone Propane Partners, L.P.*

---

[2] *See* Opp. 14, citing *Florida State Bd. of Admin. v. Green Tree Financial Corp.*, 270 F.3d 645, 661 (8th Cir. 2001) (officer paid $65 million in cash and $102 million in stock and was "the highest paid business executive in the entire United States."); *Beightol v. Navarre Corp., Inc.*, No. CIV. A. 4:08CV00010DP, 2009 WL 169069, at *4 (S.D. Miss. Jan. 26, 2009) (alleging defendant inflated earnings report and amended employment contract to increase defendant's ability to achieve two remaining incentive stock target prices); *No. 84 Employer-Teamster Joint Council Pension Trust Fund v. America West Holding Corp.*, 320 F.3d 920, 944 (9th Cir. 2003) (after not receiving any stock option awards in prior year, four defendants were awarded 350,000 options, 110,000 options, 35,000 options, and 20,000 options in the year of the alleged fraud); *In re Digi Intern., Inc. Sec. Litig.*, 6 F. Supp. 2d 1089, 1098 (D. Minn. 1998) (defendants' compensation "could be enhanced significantly by inflated financial results").

1   *Sec. Litig.*, 355 F. Supp. 2d 1069, 1093 (N.D. Cal. 2005) ("notable departures are not in and of
2   themselves evidence of scienter. Most major stock losses are often accompanied by management
3   departures, and it would be unwise for courts to penalize directors for these decisions."); *In re
4   U.S. Aggregates, Inc. Sec. Litig.*, 235 F. Supp. 2d 1063, 1074 (N.D. Cal. 2002) ("[A]fter a
5   restatement of earnings and a subsequent loan default, it is unremarkable that the Company would
6   seek to change its management team."). Here, the Complaint does not allege facts showing that
7   defendants' resignations were attributable to any finding of wrongdoing or misconduct.

### D. The Core Business Doctrine Does Not Apply

Because the Complaint lacks any particularized allegations of fraudulent intent, plaintiffs make an unavailing attempt to invoke the core operations inference. The inference, however, is only appropriate in an "exceedingly rare category of cases," and must be accompanied by "***additional detailed allegations about the defendants' actual exposure to information***." *South Ferry LP v. Killinger*, 542 F.3d 776, 784-86 & n.3 (9th Cir. 2008) (emphasis added). Here, the Complaint falls short of the standard for finding a strong inference of scienter based on the core operations or "core business" doctrine.

In *South Ferry*, the Ninth Circuit identified *Berson v. Applied Signal Technology, Inc.*, 527 F.3d 982 (9th Cir. 2008), as one of the rare cases where the "core operations inference, without more," was sufficient to plead scienter. *South Ferry*, 542 F.3d at 785-86 & n.3. In *Berson*, plaintiffs alleged contemporaneous facts contradicting defendants' statements regarding the company's revenue stream -- *e.g.*, the company had received four stop-work orders that had a "devastating effect" on the company's revenue, including one that halted $10 million to $15 million of work on the company's largest contract with one of its most important customers. *Berson*, 527 F.3d at 987. The court could permissibly infer scienter from defendants' involvement in the company's core operations only because these facts were of such prominence "that it would be 'absurd to suggest' that top management was unaware of them." *Id.* at 989.

Here, the Complaint fails to plead any facts contradicting defendants' statements, much less facts of such prominence that it would be absurd to suggest that the individual defendants were unaware of them. In the absence of such particularized, contemporaneous facts, it is far

- 13 -  REPLY ISO MOTION TO DISMISS
CASE NO. C-09-0222-CW

more plausible to infer that the individual defendants did not foresee the market conditions that caused Rackable's gross margins to decline during the Class Period. *Tellabs, Inc. v. Makor Issues & Rights, Ltd*, 127 S. Ct. 2499, 2504 (2007) (courts must consider "not only inferences urged by the plaintiff . . . but also competing inferences rationally drawn from the facts alleged").

### III.  THE COMPLAINT DOES NOT PLEAD LOSS CAUSATION

The Complaint must be dismissed because it fails to demonstrate loss causation. The Opposition asserts that loss causation is a "matter of proof at trial and not to be decided on a Rule 12(b)(6) motion to dismiss." Opp. 22:18-19. The case law, however, is replete with cases that have been dismissed on loss causation grounds at the pleading stage. *See Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1063 (9th Cir. 2008) (a complaint "must allege that *the practices that the plaintiff contends are fraudulent* were revealed to the market and caused the resulting losses." (emphasis added)).

Plaintiffs contend that the allegedly "steep drop" in Rackable's stock price following the disclosure of its "true financial condition" is sufficient to plead loss causation. Opp. 23 (citing *In re Daou Sys. Sec. Litig.*, 411 F.3d 1006 (9th Cir. 2005); *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982 (9th Cir. 2008); *In re JDS Uniphase Corp. Sec. Litig.*, No. C 02-1486 CW, 2005 WL 1705766 (N.D. Cal. July 21, 2005)). In *Daou*, the Ninth Circuit stated that "to prove loss causation, the plaintiff must demonstrate a causal connection between the deceptive acts that form the basis for the claim of securities fraud and the injury suffered by plaintiff." 411 F.3d at 1025. The plaintiffs in *Daou* met this burden because their complaint, which alleged improper revenue recognition, further alleged that the stock price dropped when defendants revealed that the company's deteriorating condition was tied to a "rapidly escalating work in progress account" representing over $10 million in unbilled receivables that was "*the direct result of prematurely recognizing revenue*." *Id.* at 1026. Similarly, in *Berson*, the plaintiffs alleged a causal connection between undisclosed "stop work" orders from the company's biggest customers, a reduced workload at the company causing a 25% decline in revenue, and a 16% drop in the company's stock price. 527 F.3d at 989-990. And in *JDS Uniphase*, this court found a causal connection between the stock price decline and the revelation that specific statements by defendants were

1 | false when made. 2005 WL 1705766, at *4.

2 |     Plaintiffs have failed to demonstrate a causal connection between the alleged fraud and the drop in Rackable's stock price. Instead, the Complaint relies on conclusory allegations that the market necessarily understood that Rackable's announcement of financial results revealed past fraud. The Ninth Circuit has expressly held that such allegations do not plead loss causation under *Dura*: "So long as there is a drop in a stock's price, a plaintiff will always be able to contend that the market 'understood' a defendant's statement precipitating a loss as a coded message revealing the fraud. Enabling a plaintiff to proceed on such a theory would effectively resurrect what *Dura* discredited . . . ." *Metzler*, 540 F.3d at 1064.

    Each of the alleged disclosures from January 16, 2007 through April 24, 2007 -- which the Complaint alleges revealed the "truth" to the market -- disclose negative news about Rackable's financial condition, its future prospects, or about competition in the server industry at large. These disclosures do not reveal, and the Complaint does not otherwise allege, the necessary causal link between the stock drop and any alleged fraud by defendants (*e.g.*, facts relating to Rackable's purported internal control problems, inventory write-downs, or unpaid sales or use tax). *See Metzler*, 540 F.3d at 1063 (A complaint must allege the "market learned of and reacted to [the] fraud, as opposed to merely reacting to reports of the defendant's poor financial health generally."); *accord In re Tellium, Inc. Sec. Litig.*, No. Civ. A. 02CV5878 FLW, 2005 WL 2090254, at *4 (D.N.J. Aug. 26, 2005). Because the Complaint does not plead this essential element of a claim for securities fraud, it must be dismissed.[3]

## CONCLUSION

As the opening brief demonstrates, the Court should dismiss the Complaint.

Dated: November 2, 2009

O'MELVENY & MYERS LLP

By:     /s/
Meredith N. Landy
Attorneys for Defendants Rackable Systems, Inc., Thomas K. Barton, Madhu Ranganathan and Todd R. Ford

---

[3] The Complaint's Section 20(a) claim for control person liability fails because plaintiffs have not pled a primary violation. *In re Cylink Sec. Litig.*, 178 F. Supp. 2d 1077, 1089 (N.D. Cal. 2001).

- 15 -      REPLY ISO MOTION TO DISMISS
CASE NO. C-09-0222-CW