MEREDITH N. LANDY (S.B. #136489)
PETER T. SNOW (S.B. #222117)
O'MELVENY & MYERS LLP
2765 Sand Hill Road
Menlo Park, California  94025
Telephone:    (650) 473-2600
Facsimile:     (650) 473-2601
Email:           mlandy@omm.com
                     psnow@omm.com

Attorneys for Defendants
Rackable Systems, Inc., Thomas K. Barton, Madhu
Ranganathan and Todd R. Ford

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE RACKABLE SYSTEMS, INC. SECURITIES LITIGATION | Case No. C-09-0222-CW |
| | CLASS ACTION |
| THIS DOCUMENT RELATES TO: ALL ACTIONS. | **REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS SUPPLEMENTAL SECOND AMENDED COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| | Date:   July 15, 2010<br>Time:   2:00 p.m.<br>Courtroom: 2, 4th Floor |

## **TABLE OF CONTENTS**

                                                              **Page**

INTRODUCTION ............................................................................................................................. 1

ARGUMENT ..................................................................................................................................... 2

    I.     THE PSLRA'S SAFE HARBOR AND THE BESPEAKS CAUTION DOCTRINE FULLY IMMUNIZE DEFENDANTS' PROJECTIONS AND FORWARD-LOOKING STATEMENTS ................................................................. 2

    II.    THE SAC FAILS TO PLEAD WITH PARTICULARITY THAT ANY STATEMENT BY DEFENDANTS WAS FALSE OR MISLEADING ............... 5

          A.    The Complaint Does Not Plead With Particularity That Any Statement Regarding Rackable's Sales And Use Tax Liability Was False Or Misleading ................................................................................. 5

          B.    The Complaint Does Not Plead With Particularity That Any Statement Regarding Rackable's Inventory Reserves Or ERP System Was False Or Misleading ................................................................. 7

          C.    The SAC Does Not Plead With Particularity That Any Statement Regarding Rackable's RapidScale Sales Projections Was False Or Misleading .......................................................................................... 8

    III.   THE SAC FAILS TO SATISFY THE HEIGHTENED PLEADING STANDARD FOR SCIENTER ................................................................................. 8

          A.    The SAC's Confidential Witnesses Do Not Support Any Inference of Scienter ........................................................................................ 8

          B.    The Absence Of Any Motive To Commit Fraud Further Undermines Plaintiffs' Scienter Allegations .............................................. 9

          C.    The SAC's Allegations Regarding Alleged "Admissions," SOX Certifications and Purported GAAP Violations Do Not Support Any Inference of Scienter ................................................................... 10

              1.    Defendants' Later Revelations Are Not "Admissions" And Do Not Create Any Inference Of Scienter ................................................. 11

              2.    Defendants' SOX Certifications Do Not Create Any Inference Of Scienter ........................................................................................ 12

              3.    The SAC Fails To Allege Any Violation Of GAAP, Much Less A Violation Creating Any Inference Of Scienter .......................................... 12

          D.    The SAC's Allegations Regarding Rackable's Size Do Not Support Any Inference of Scienter ................................................................... 13

    IV.   THE SAC DOES NOT PLEAD LOSS CAUSATION ......................................... 14

CONCLUSION ................................................................................................................................ 15

**TABLE OF AUTHORITIES**

**Page**

**CASES**

*Backe v. Novatel Wireless, Inc.*,
  642 F. Supp. 2d 1169 (S.D. Cal. 2009) ................................................................. 13, 14

*Basic, Inc. v Levinson*,
  485 U.S. 224 (1988) ........................................................................................................ 4

*Berson v. Applied Signal Tech., Inc.*,
  527 F.3d 982 (9th Cir. 2008) ....................................................................................... 13

*Cal. Pub. Employees' Ret. Sys. v. Chubb Corp.*,
  394 F.3d 126 (3d Cir. 2004) ........................................................................................... 2

*Dura Pharm., Inc. v. Broudo*,
  125 S. Ct. 1627 (2005) ................................................................................................. 14

*Grossman v. Novell, Inc.*,
  120 F.3d 1122 (10th Cir. 1997) ..................................................................................... 4

*Harris v. Ivax Corp.*,
  182 F.3d 799 (11th Cir. 1999) .................................................................................. 1, 3

*In re Apple Computer Sec. Litig.*,
  886 F.2d 1109 (9th Cir. 1989) ....................................................................................... 9

*In Re Cabletron Sys. Sec. Litig.*,
  311 F.3d 11 (1st Cir. 2002) ............................................................................................ 9

*In re Copper Mountain Sec. Litig.*,
  311 F. Supp. 2d 857 (N.D. Cal. 2004) ...................................................................... 3, 4

*In re Downey Sec. Litig.*,
  No. CV 08-3261 JFW(RZx), 2009 WL 2767670 (C.D. Cal. Aug. 21, 2009) ............ 2, 15

*In re Gilead Sciences Sec. Litig.*,
  536 F.3d 1049 (9th Cir. 2008) ..................................................................................... 14

*In re Impac Mortgage Holdings, Inc. Sec. Litig.*,
  554 F. Supp. 2d 1083 (C.D. Cal. 2008) ......................................................................... 2

*In re Impax Laboratories, Inc. Sec. Litig.*,
  No. C04-04802, 2007 WL 7022753 (N.D. Cal. July 18, 2007) ............................ 13, 14

*In re Intelligroup Sec. Litig.*,
  468 F. Supp. 2d 670 (D.N.J. 2006) .............................................................................. 15

*In re Intelligroup Sec. Litig.*,
  527 F. Supp. 2d 262 (D.N.J. 2007) ........................................................................ 8, 12

*In re Ligand Pharms., Inc. Sec. Litig.*,
  No. 04CV1620DMS(LSP), 2005 WL 2461151 (S.D. Cal. Sept. 27, 2005) ................... 4

*In re Omnicom Group, Inc. Sec. Litig.*,
  597 F.3d 501 (2d Cir. 2010) ........................................................................................ 15

*In re Radian Sec. Litig.*,
  612 F. Supp. 2d 594 (E.D. Pa. 2009) ............................................................................ 6

**TABLE OF AUTHORITIES**
(cont'd)

**Page**

*In re Read-Rite Corp. Sec. Litig.*,
   335 F.3d 843 (9th Cir. 2003) ................................................................................................ 11

*In re Silicon Graphics Inc. Sec. Litig.*,
   183 F.3d 970 (9th Cir. 1999) .................................................................................................. 10

*In re Tellium, Inc. Sec. Litig.*,
   No. Civ. A. 02cv5878FLW, 2005 WL 2090254 (D.N.J. Aug. 26, 2005) ............................... 14

*In re Vantive Corp. Sec. Litig.*,
   283 F.3d 1079 (9th Cir. 2002) ................................................................................................ 10

*In re Wet Seal, Inc. Sec. Litig.*,
   518 F. Supp. 2d 1148 (C.D. Cal. 2007) .................................................................................. 13

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*,
   540 F.3d 1049 (9th Cir. 2008) .......................................................................................... 10, 14

*Middlesex Ret. Sys. v. Quest Software Inc.*,
   527 F. Supp. 2d 1164 (C.D. Cal. 2007) .................................................................................. 11

*Morgan v. AXT, Inc.*,
   No. 04-4362 MJJ, 2005 WL 2347125 (N.D. Cal. Sept. 23, 2005) ......................................... 13

*No. 84 Employer-Teamster Joint Council v. Am. West Holding Corp.*,
   320 F.3d 92 (9th Cir. 2003) ...................................................................................................... 2

*Novak v. Kasaks*,
   216 F.3d 300 (2d Cir. 2000) ................................................................................................... 12

*Nursing Home Pension Fund, Local 144 v. Oracle Corp.*,
   380 F.3d 1226 (9th Cir. 2004) .......................................................................................... 11, 12

*Plevy v. Haggerty*,
   38 F. Supp. 2d 816 (C.D. Cal. 1998) ...................................................................................... 13

*Ronconi v. Larkin*,
   253 F.3d 423 (9th Cir. 2001) .................................................................................................. 10

*Rothman v. Gregor*,
   220 F.3d 81 (2d Cir. 2000) ..................................................................................................... 12

*South Ferry LP v. Killinger*,
   542 F.3d 776 (9th Cir. 2008) .................................................................................................. 13

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   127 S. Ct. 2499 (2007) ......................................................................................................... 2, 9

*Thornton v. Micrografx, Inc.*,
   878 F. Supp. 931 (N.D. Tex. 1995) ........................................................................................ 10

*Weiss v. Amkor Tech., Inc.*,
   527 F. Supp. 2d 938 (D. Ariz. 2007) ...................................................................................... 14

*Yourish v. Cal. Amplifier*,
   191 F.3d 983 (9th Cir. 1999) .................................................................................................. 11

*Zucco Partners, LLC v. Digimarc Corp.*,
   552 F.3d 981 (9th Cir. 2009) .................................................................................................. 10

**TABLE OF AUTHORITIES**
(cont'd)

**Page**

**STATUTES**

17 C.F.R. § 229.303(a)(3)(ii) ................................................................................................ 7

**OTHER AUTHORITIES**

H.R. Conf. Rep. No. 104-369, *reprinted in* 1995 U.S.C.C.A.N. 730 (1995) ................................. 3

# INTRODUCTION[1]

The Opposition fails to distinguish the SAC's allegations from the essentially identical ones that this Court considered and rejected in dismissing the FAC. Not only do plaintiffs seek to premise liability on the same forward-looking statements that this Court held inactionable under the PSLRA Safe Harbor, but plaintiffs still fail to plead any particularized allegations suggesting that any statement by any defendant was false or misleading when made, much less made with fraudulent intent. The vast majority of the "new" allegations in the SAC are confidential witness ("CW") statements, none of which are sufficiently particularized to satisfy the standards required by Federal Rule of Civil Procedure 9(b) and the PSLRA. Because the Opposition provides no showing that plaintiffs will be able to cure the SAC's defects, it should be dismissed, with prejudice, on the same four grounds that required dismissal of the FAC.

First, the PSLRA Safe Harbor and the Bespeaks Caution Doctrine are a complete bar to plaintiffs' claims. Plaintiffs try to twist Rackable's financial projections into false statements of fact by asserting that (instead of forecasting future results) they misrepresented that Rackable was "'on track' to hit its mark." Opp. 15:18-23. No such exception exists; to find one here would effectively eviscerate the Safe Harbor altogether. All of defendants' statements are forward-looking because they are alleged to have impacted Rackable's financial projections. *See Harris v. Ivax Corp.*, 182 F.3d 799, 807 (11th Cir. 1999). And, because they were "consistently accompanied" by meaningful cautionary language, they are fully insulated from liability under the PSLRA Safe Harbor and the Bespeaks Caution Doctrine. Order 14:11-25.

Second, the SAC fails to plead particularized facts showing that any statement by defendants was false or misleading when made. The allegations attributed to the SAC's sixteen new CWs do not identify any contemporaneous facts contradicting any of defendants' statements. For this same reason, plaintiffs fail to allege facts even approaching the standard for pleading a strong inference of scienter under *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499,

---

[1] This reply brief uses the same terms defined in the Memorandum of Points and Authorities in support of Defendants' Motion to Dismiss the Supplemental Second Amended Complaint, filed with the Court on April 9, 2010 ("MTD"). Plaintiffs' Memorandum of Points and Authorities in Opposition to Defendants' Motion to Dismiss, dated May 26, 2010, is cited as "Opp."

2504-05 (2007). Confronted with the absence of any allegations suggesting contemporaneous knowledge, the Opposition strings together a series of deficient allegations, including the identical motive and insider sales allegations that this Court has already held insufficient. *See Cal. Pub. Employees' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 155-56 (3d Cir. 2004) (Plaintiffs cannot satisfy the PSLRA by "[c]obbling together a litany of inadequate allegations.").

Fourth, the SAC fails to allege facts demonstrating loss causation. Plaintiffs have little substantive response to this defect other than to assert that loss causation is a question of fact that should not be resolved at the pleadings stage. To the contrary, courts routinely dismiss complaints for failure to plead loss causation where, as here, plaintiffs have alleged nothing more than a drop in stock price following disappointing financial results.

The Class Period ended over three years ago. Plaintiffs had two years to investigate their claims before they brought suit and they have now unsuccessfully attempted three times to assert valid securities fraud claims. Plaintiffs will never be able to overcome the PSLRA Safe Harbor because no additional facts can alter the meaningful cautionary language that accompanied Rackable's forward-looking statements. For these reasons and as discussed below, the SAC should be dismissed with prejudice. *See In re Downey Sec. Litig.*, No. CV 08-3261 JFW(RZx), 2009 WL 2767670, at *16 (C.D. Cal. Aug. 21, 2009) (dismissing second amended complaint with prejudice); *In re Impac Mortgage Holdings, Inc. Sec. Litig.*, 554 F. Supp. 2d 1083, 1102 (C.D. Cal. 2008) (dismissing first amended complaint with prejudice).

## ARGUMENT

### I. THE PSLRA'S SAFE HARBOR AND THE BESPEAKS CAUTION DOCTRINE FULLY IMMUNIZE DEFENDANTS' PROJECTIONS AND FORWARD-LOOKING STATEMENTS

Plaintiffs assert, as they did in opposition to defendants' prior motion to dismiss, that "present tense" statements regarding past conduct and its "effects on the corporation" are not forward-looking. *See* Opp. 21:13-15 (citing *No. 84 Employer-Teamster Joint Council v. Am. West Holding Corp.*, 320 F.3d 92, 937 (9th Cir. 2003)). But, as before, plaintiffs cannot identify any "present tense" statement that is not entitled to the protection of the PSLRA Safe Harbor and

Bespeaks Caution Doctrine.[2] Rackable's financial projections "easily meet the definition of a forward-looking statement" and plaintiffs allege that all defendants' statements were false or misleading based on their impact on those projections. *See* Order 14:17-23; MTD 8:8-20; *Harris*, 182 F.3d at 807. Defendants' statements, therefore, are fully insulated from liability by the PSLRA Safe Harbor because, as this Court previously found, they were "consistently accompanied" by meaningful cautionary language. Order 14:23-25.

Plaintiffs now contend that the cautionary language accompanying certain Rackable press releases was not meaningful. Opp. 22, n.30. To the contrary, in the press release containing Rackable's 4Q06 financial projections, for example, Rackable specifically identified as forward-looking the company's projections regarding "improving gross margins for the fourth quarter and full year 2007" and "its fourth quarter 2006 and full year 2007 financial performance." RJN Ex. 7 (10/30/06 8-K); *see also* RJN Ex. 10, 11-13, 28, 29. Rackable then disclosed specific risks that could affect Rackable's ability to meet its projections, including that "a significant portion of the company's revenues come from a small number of customers," "orders for Rackable Systems' products can be received at the end of the quarter," "increased competition may cause pricing pressure on Rackable Systems' products," and that "component pricing can rise unexpectedly, negatively impacting Rackable Systems' gross margins as well as other financial measures." *Id.* Each of these disclosed risks materialized in the fourth quarter of 2006 to place heavy pressure on Rackable's margins. S*ee* MTD 2-7. And to the extent plaintiffs argue that Rackable was required to provide even greater detail regarding the risks that materialized or to identify *ex ante* every risk that would cause it to miss its 4Q06 projections, the law simply does not require such prophetic powers. *See* Opp. 22:3-23:3; *In re Copper Mountain Sec. Litig.*, 311 F. Supp. 2d 857, 882 (N.D.

---

[2] Plaintiffs argue that Ford's statement that Rackable had "strong bookings" in October 2006 is a present-tense statement of fact. *See* Opp. 15:1-7. They contend that this statement is at odds with Rackable's later disclosure that 74% of its revenue came in the last month of the fourth quarter. *Id.* There is no contradiction here. Ford's statement related to bookings, not revenue, and plaintiffs have offered no contemporaneous facts suggesting that Rackable's bookings were not strong in October 2006. SAC ¶ 90. Naturally, the ordinary course of a deal is the booking of the contract, the performance and fulfillment of the contract, and then, lastly, the customer's payment under the contract. There is nothing inconsistent between strong early bookings and backend-loaded revenue for a quarter.

1  Cal. 2004) (company need not list all the factors that may affect the forward-looking statements;
2  rather "the warning must only mention *important* factors of similar significance to those actually
3  realized"); *see also* H.R. Conf. Rep. No. 104-369, *reprinted in* 1995 U.S.C.C.A.N. 730, 743
4  (1995) (The "Committee expects that the cautionary statements identify important factors . . . but
5  not all factors. Failure to include the particular factor that ultimately causes the forward-looking
6  statement not to come true will not mean that the statement is not protected by the safe harbor.");
7  *In re Ligand Pharms., Inc. Sec. Litig.*, No. 04CV1620DMS(LSP), 2005 WL 2461151, at *18
8  (S.D. Cal. Sept. 27, 2005) (cautionary language that did not specifically warn of risks related to
9  rebates and inventory returns at issue was sufficient because the factors identified in the warnings
10 were of similar significance).

11     Plaintiffs also assert that it was improper for Rackable to refer investors to its SEC filings
12 for more detailed risk disclosures before conference calls with investors. Opp. 22 n. 30 (citing
13 *Grossman v. Novell, Inc.*, 120 F.3d 1122, 1122-23 (10th Cir. 1997)). In *Grossman*, however, the
14 court held just the opposite, stating that "[p]articularly in a fraud on the market case, the relevant
15 inquiry concerns the total mix of information available to the market at the time of the allegedly
16 fraudulent statements." 120 F.3d at 1122-23 (citing *Basic, Inc. v Levinson*, 485 U.S. 224, 246
17 (1988) ("The market price of shares traded on well-developed markets reflects all publicly
18 available information.")). In *Grossman*, the PSLRA Safe Harbor immunized the defendants'
19 projections in press releases and conference calls in light of the cautionary language in the
20 company's filings with the SEC. 120 F.3d at 1123. Here, defendants' forward-looking
21 statements were not only accompanied by meaningful cautionary language that was sufficient in
22 itself, but also referenced the detailed Risk Factors in Rackable's SEC filings. Nothing more is
23 required.

24     Plaintiffs contend that defendants' forward-looking statements are not protected by the
25 PSLRA Safe Harbor because they had "actual knowledge" of the effect that charging sales tax,
26 ERP implementation issues, and inventory issues would have on Rackable's gross margins. Opp.
27 21:18-21. As an initial matter, the "actual knowledge" prong of the PSLRA Safe Harbor does not
28 come into play because defendants' statements were accompanied by meaningful cautionary

1    language. *In re Copper Mountain*, 311 F. Supp. 2d at 882. Moreover, as discussed below, the

2    Opposition now concedes that sales tax charges had no impact on Rackable's gross margins, and

3    the SAC lacks any particularized allegations showing that defendants knew, in advance, that any

4    ERP system or inventory issues would cause Rackable to miss its financial projections. The SAC

5    has no allegations showing that defendants were aware of information that would have given

6    them "actual knowledge" that any statement was false or misleading when made.

7         As this Court held in dismissing the FAC, defendants' statements are fully protected by

8    the PSLRA Safe Harbor because they were forward-looking and accompanied by meaningful

9    cautionary language. The SAC may be dismissed in its entirety on this ground alone. And given

10   plaintiffs' inability to plead around the Safe Harbor, or the immutable cautionary language

11   embedded in Rackable's disclosures, that dismissal should be with prejudice.

12   **II.   THE SAC FAILS TO PLEAD WITH PARTICULARITY THAT ANY STATEMENT BY DEFENDANTS WAS FALSE OR MISLEADING**

13   

14        **A.   The Complaint Does Not Plead With Particularity That Any Statement Regarding Rackable's Sales And Use Tax Liability Was False Or Misleading**

15        Plaintiffs now concede, for the first time, that sales taxes had no impact on Rackable's

16   gross margins at any time in the Class Period. *See* Opp. 7 n.8 ("GAAP precludes Plaintiffs from

17   so alleging [that charging sales tax affected Rackable's gross margins] because sales taxes are not

18   part of the cost of goods sold."). This Court previously dismissed plaintiffs' allegations regarding

19   Rackable's sales tax liability on this very ground. Order 11:12-15. Despite this fatal concession,

20   plaintiffs continue to assert that Rackable should have disclosed in advance that it would begin

21   charging sales tax to its customers in 4Q06.

22        Plaintiffs have modified their allegations to assert that Rackable should have disclosed in

23   advance the "indirect" impact that charging sales tax might have on Rackable's competitive

24   position -- not its gross margins. This assertion rings hollow, however, in light of the substantial

25   disclosures that Rackable made before and during the Class Period regarding its sales tax liability.

26   Opp. 7:5-9:7. Rackable disclosed its potential sales tax liability in February 2006, months before

27   the Class Period. RJN Ex. 2 at 27. Rackable also disclosed at that time that it had recorded a

28   receivable for amounts owed from its customers, but that "if we are not able to recover these sales

1   taxes from these customers, we will record an additional charge to our operating results and need
2   to pay these taxes out of our funds." *Id*. Before, during and after the Class Period, Rackable
3   appropriately increased its reserve for unpaid sales taxes and, after it reached a settlement with
4   the State of California in connection with a sales tax audit, promptly recorded an expense for the
5   settlement amount. MTD 3:23-27, 4:10-11, 6:1-4; Order 11:2-6. Plaintiffs' assertion that
6   Rackable "concealed" that it had not charged sales tax cannot be reconciled with Rackable's
7   financial statements and substantive disclosures. Opp. 8:9-14, 9:8-11:8. And the new CW
8   allegations in the SAC merely corroborate the facts that Rackable disclosed before and during the
9   Class Period. *See* Opp. 7:15-8:8 (CW9 alleging that Rackable did not charge sales tax before IPO
10  in 2005; CW17 alleging that Rackable was still working to resolve the sales tax issue in 2008;
11  CW16 alleging that Rackable had not flagged invoices to charge state taxes).

12        The Opposition challenges Rackable's accounting for unpaid sales tax, but the SAC falls
13  far short of the high standard to plead a fraudulent violation of GAAP. *See In re Radian Sec.*
14  *Litig*., 612 F. Supp. 2d 594, 615 (E.D. Pa. 2009) (dismissing allegations of GAAP violations
15  where plaintiffs failed to allege facts showing "that Radian's decision not to report whatever
16  impairment may have existed until July 2007 involved not merely simple, or even inexcusable
17  negligence, but an extreme departure from the range of reasonable business treatments permitted
18  under GAAP"). The Opposition references Ranganathan's efforts to collect unpaid sales taxes
19  from Rackable customers, including Yahoo!, but the SAC provides no indication how, if at all,
20  such efforts impacted Rackable's accounting determinations. *See* Opp. 11:9-23. The Opposition
21  asserts, without reference to any accounting literature, that Rackable should not have accounted
22  for unpaid sales tax as a receivable and expensed the amount of unpaid sales tax that it was
23  unable to collect. *Id.* Instead, the Opposition suggests that Rackable should have had a "reserve
24  for non-payment" of sales tax. The SAC is devoid of allegations, however, showing that such
25  accounting treatment was required under GAAP, or that Rackable even had the necessary facts,
26  i.e., knowledge regarding the amounts it could not collect, to create such a reserve. Nor would
27  such a reserve have communicated any additional information because Rackable had already
28  disclosed to investors that it would have to pay all unpaid sales tax that it was unable to collect

1    from its customers.

2    Finally, this Court has already considered and rejected plaintiffs' assertion that additional
3    disclosure was required under Item 303 of Regulation S-K. As defendants explained in their
4    motion to dismiss the FAC, Item 303 applies to disclosures in an issuer's annual statements -- not
5    to the financial projections that Rackable made with its 3Q06 earnings release. *See* 17 C.F.R. §
6    229.303(a)(3)(ii)).

**B. The Complaint Does Not Plead With Particularity That Any Statement Regarding Rackable's Inventory Reserves Or ERP System Was False Or Misleading**

9    The Court dismissed the FAC's allegations regarding Rackable's internal controls and
10   ERP system because they were too vague to show that Rackable should have written off its
11   excess inventory any earlier than 2Q07 and because the FAC relied exclusively on post-Class
12   Period statements to allege that Rackable was contemporaneously aware of any deficiencies in its
13   ERP system. Order 12:4-7, 12:26-28. The SAC suffers from the same deficiencies. Although
14   the Opposition cites new CW statements, the conclusory assertions based on their statements are,
15   in substance, identical to the allegations that the Court rejected in the FAC.

16   Plaintiffs assert that Rackable's inventory reserves and the financial projections based on
17   them were false and misleading because they did not reflect the high inventory costs that
18   Rackable would incur during 4Q06. The SAC does not contain any allegations, however,
19   showing that that any defendant was aware of facts contradicting Rackable's accounting for its
20   inventory. Rackable had been using its just-in-time inventory procurement policy since its IPO in
21   2005 and repeatedly disclosed the risks of that policy. *See, e.g.*, RJN Ex. 5 at 28; Ex. 2 at 21.
22   There are no allegations suggesting that any material change in Rackable's inventory policy
23   occurred between the time of its IPO and Rackable's 4Q06 projections that should have been
24   disclosed to investors.

25   Plaintiffs' allegations regarding Rackable's ERP system are still primarily based on
26   statements made long after the Class Period. *See, e.g.*, SAC ¶¶ 60, 63, 72. The only allegations
27   that allude to contemporaneous information relate to difficulties in implementing the system. But
28   they do not demonstrate that the ERP system was not ready for service by 4Q06. *See* SAC ¶¶

- 7 -    REPLY ISO MOTION TO DISMISS SAC
         CASE NO. C-09-0222-CW

70(b), 71(c). In sum, the SAC alleges that Rackable implemented the ERP system by 4Q06, discovered deficiencies in the system by 1Q07, and was still working on improvements to the ERP system as late as 2009. These are hardly allegations of fraud. *See In re Intelligroup Sec. Litig.*, 527 F. Supp. 2d 262, 335 (D.N.J. 2007) (upgrade to financial system is not admission that past internal controls were inadequate).

### C. The SAC Does Not Plead With Particularity That Any Statement Regarding Rackable's RapidScale Sales Projections Was False Or Misleading

The SAC's allegations regarding projected sales of RapidScale products are virtually unchanged from the FAC. *See* Order 14:2-10 (dismissing allegations that, three months after Class Period, new CEO Barrenechea found no support for $20M sales projection); Opp. 14:15-17 ("Three months later, CEO Barrenechea retracted the FY 2007 projection and admitted that the Q2 2007 $5+M projection had not been achieved . . . ."). The Opposition asserts that "there was no reasonable basis for any sales projection because the product was pricier than competitors' products, complex and difficult to pitch, and not geared toward Rackable's customers." Opp. 14:18-20. This assertion, however, is based entirely on post-Class Period criticism by Rackable employees who witnessed the termination of RapidScale operations in 2008. MTD 17:26-18:3. Moreover, plaintiffs cannot credibly assert that Rackable had "no reasonable basis" to expect any sales of RapidScale products when Rackable actually sold $800,000 and $2.4M worth of RapidScale products in 2006 and 2007, respectively. SAC ¶ 79(b)(iv), ¶ 184.

## III. THE SAC FAILS TO SATISFY THE HEIGHTENED PLEADING STANDARD FOR SCIENTER

### A. The SAC's Confidential Witnesses Do Not Support Any Inference of Scienter

The Opposition touts the SAC's addition of 16 new CWs, but devotes less than a page to any discussion of how the CW statements allegedly support an inference of scienter. Opp. 16:7-25. Defendants' opening brief identified numerous deficiencies in the SAC's CW allegations. *See, e.g.*, MTD 18:21-24 (CWs not employed by Rackable during Class Period could not have direct knowledge of defendants' relevant state of mind), 20:9-17 (identifying conflict between allegation that defendants must have known Rackable could not meet its projections and

- 8 -  
REPLY ISO MOTION TO DISMISS SAC  
CASE NO. C-09-0222-CW

1  statements by CW9 and CW13), 20:19-21 (CW15's statement that Barton believed RapidScale
2  sales could expand Rackable's market inconsistent with inference of scienter), 20:27-21:1 (CW
3  statements critical of RapidScale line fail to show contemporaneous knowledge that projections
4  were inaccurate), 21:4-15 (identifying ambiguities in CW statements regarding ERP system,
5  many of which post-date Class Period), 21:16-21 (identifying statements by CW9 and CW17
6  indicating that human error, not any intent to defraud, was responsible for ERP system and
7  inventory issues).  The Opposition fails to meaningfully address any of these deficiencies.  *See,*
8  *e.g.*, Opp. 8 n.10 (asserting in footnote that CWs employed after the Class Period support
9  inference of scienter without showing how their statements reveal anything about defendants'
10 relevant state of mind).

11        Plaintiffs attempt to obfuscate the deficiencies of the CW statements by asserting that,
12 taken together, they generally describe "the same or similar conditions in existence before, during
13 and after the Class Period."  *Id*. 16:19-20 (citing *In Re Cabletron Sys. Sec. Litig.*, 311 F.3d 11, 30
14 (1st Cir. 2002)).  Such generalizations do not even approach the particularized showing required
15 to plead the "strong" and "cogent and compelling" inference of fraudulent intent required under
16 *Tellabs*, 127 S. Ct. at 2504.  If plaintiffs cannot identify any particularized allegation supporting
17 an inference of scienter after speaking to 16 new CWs, no further investigation is going to reveal
18 such facts.

19        **B.    The Absence Of Any Motive To Commit Fraud Further Undermines
              Plaintiffs' Scienter Allegations**
20
        Because the facts regarding defendants' Class Period stock sales and compensation
21
   packages do not support any inference of scienter, plaintiffs again argue that the Court should
22
   ignore longstanding Ninth Circuit precedent by inferring scienter from stock sales occurring
23
   before the Class Period.  *See* Opp. 18:11-16; *In re Apple Computer Sec. Litig.*, 886 F.2d 1109,
24
   1117 (9th Cir. 1989) ("Large sales of stock *before* the class period are inconsistent with plaintiffs'
25
   theory that defendants attempted to drive up the price of Apple stock *during* the class period.");
26
   *see also Metzler Inv. GMBH v. Corinthian Colls., Inc*., 540 F.3d 1049, 1066-67 (9th Cir. 2008);
27
   *Ronconi v. Larkin*, 253 F.3d 423, 436 (9th Cir. 2001); *In re Silicon Graphics Inc. Sec. Litig*., 183
28

1  F.3d 970, 987 (9th Cir. 1999). Just as the Court rejected this argument then, the Court should
2  reject it now. The vast majority of alleged stock sales were made by Barton and Ford following
3  Rackable's June 10, 2005 IPO. This was the first time that a public market for Rackable's shares
4  became available and long before the SAC alleges that Rackable's stock price was allegedly
5  inflated by Rackable's 4Q06 financial projections. *See Thornton v. Micrografx, Inc*., 878 F.
6  Supp. 931, 938 (N.D. Tex. 1995) (rejecting allegation that defendants would "expend so much
7  time and effort to conceal facts and misrepresent information" and then hold their stock during
8  the class period). Plaintiffs' theory that defendants were part of a scheme to maximize their
9  personal gain before the "truth" was revealed in early 2007 is eviscerated by the absence of any
10 stock sales by two of the three individual defendants -- notably, the CEO (Barton) and the CFO
11 (Ranganathan) during the Class Period. *See In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1092
12 (9th Cir. 2002).
13      Plaintiffs also ask the Court to reconsider its holding that plaintiffs failed to allege
14 anything "remarkable" about the individual defendants' compensation packages that would
15 support any inference of scienter. Opp. 19:2-5. The Opposition, however, does not point to any
16 new allegations to justify such a reversal. The Opposition merely asserts that Rackable's
17 management received $20.8M in stock-based compensation in 2006, but there are no allegations
18 regarding how this compensation was tied to the company's financials. *See Zucco Partners, LLC
19 v. Digimarc Corp.*, 552 F.3d 981, 1004 (9th Cir. 2009) (finding no inference of scienter created
20 by allegations that individual defendants received "bonuses and stock option grants in part based
21 on Digimarc's financial performance" because "there is no allegation indicating how intimately
22 the bonuses were tied to the company's financials").

23  **C.  The SAC's Allegations Regarding Alleged "Admissions," SOX Certifications and Purported GAAP Violations Do Not Support Any Inference of Scienter**
24
25  Plaintiffs make a last-ditch attempt to muster an inference of scienter from an assortment
26 of fraud-by-hindsight allegations about post-Class Period "admissions" and upgrades to
27 Rackable's internal controls, SOX certifications and alleged GAAP violations. None of these
28 allegations, individually or when considered together, support any inference of scienter.

1. **Defendants' Later Revelations Are Not "Admissions" And Do Not Create Any Inference Of Scienter**

First, plaintiffs assert that the Court may infer scienter from defendants' "admission" on Rackable's February 1, 2007 conference call that they "should have realized the impact of these issues [*e.g.*, pricing for memory, cost of goods sold, and competitive intensity] earlier in the quarter." *See* Opp. 17:8-10 (citing SAC ¶ 125). Plaintiffs also claim -- just as they did in the FAC -- that new CEO Barrenechea's assessment long after the Class Period that Rackable could not achieve its previous RapidScale sales projection is an "admission" that Rackable's previous projection was false and misleading when made.

The cases cited in the Opposition do not support plaintiffs' assertion that these "admissions" support any inference of scienter. *See* Opp. 17 (citing *In re Read-Rite Corp. Sec. Litig.*, 335 F.3d 843, 846 (9th Cir. 2003); *Middlesex Ret. Sys. v. Quest Software Inc.*, 527 F. Supp. 2d 1164, 1189 (C.D. Cal. 2007); *Nursing Home Pension Fund, Local 144 v. Oracle Corp.*, 380 F.3d 1226, 1232-33 (9th Cir. 2004)). In *Read-Rite*, the court acknowledged that "'it is clearly insufficient for plaintiffs to say that a later, sobering revelation makes an earlier, cheerier statement a falsehood'" and held that the defendants' later statements failed to show that they had contemporaneous knowledge of any facts contradicting their earlier statements. 335 F.3d at 846 (quoting *Yourish v. Cal. Amplifier*, 191 F.3d 983, 997 (9th Cir. 1999)). In *Middlesex*, the court held that plaintiffs had pled a strong inference of scienter based primarily on the sheer magnitude of the company's restatement ($150 million) due to backdated stock options and the defendants' positions at the company when the misstated financials issued -- essentially inferring scienter under the Core Business Doctrine. 527 F. Supp. 2d at 1189. Here, Rackable never restated its financials from the Class Period and the SAC does not allege any facts of the magnitude required to infer scienter under the Core Business Doctrine. In *Oracle*, the court similarly found a strong inference of scienter based on a combination of factors, including the magnitude of the deals responsible for Oracle's revenue shortfall ($186 million), the CEO's later statement that he was personally involved in those deals, and the CEO's sales of $900 million in stock during the class period. 380 F.3d at 1232-33. The SAC is devoid of facts approaching those alleged in *Oracle*;

here, the SAC fails to allege Barton's contemporaneous "personal involvement" in any particular deal that had a cataclysmic effect on Rackable's ability to meet its projections, and he did not sell any stock during the Class Period.

### 2. **Defendants' SOX Certifications Do Not Create Any Inference Of Scienter**

The assertion that Barton and Ranganathan's SOX certifications support any inference of scienter fails because it is based on Rackable's disclosure in its 2007 Form 10-K, filed on March 10, 2008, that its external auditors had detected a material weakness in Rackable's controls for inventory accounting. *See* Opp. 19:8-21 (citing SAC ¶ 181). This does not support any inference regarding any defendant's state of mind a year earlier, and Rackable's identification and remediation of an internal control weakness is not in itself indicia of fraud. *See, e.g.*, *In re Intelligroup Sec. Litig.*, 527 F. Supp. 2d at 335.

### 3. **The SAC Fails To Allege Any Violation Of GAAP, Much Less A Violation Creating Any Inference Of Scienter**

Plaintiffs' assertion that Rackable purportedly violated GAAP likewise does not support any inference of scienter because the SAC alleges neither any accounting violation by Rackable nor the corresponding fraudulent intent required to state a claim for securities fraud based on any such violation. *See Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000) ("[A]llegations of GAAP violations or accounting irregularities" are sufficient to plead scienter only where "coupled with evidence of corresponding fraudulent intent."); *Rothman v. Gregor*, 220 F.3d 81, 98 (2d Cir. 2000) (allegation that defendant violated various GAAP provisions is not sufficient to state a securities fraud claim without additional allegations of "corresponding fraudulent intent"). The Opposition relies on the same vague allegations that this Court rejected in the FAC, namely that Rackable wrote off a substantial amount of obsolete inventory three months after the Class Period -- a *post hoc* event that has no bearing on contemporaneous knowledge. *See* Order 16:11-21; Opp. 19:22 - 21:5. Nor does the SAC or the Opposition contain comprehensible, much less particularized, allegations explaining why Rackable's reserves for sales and use tax liability were allegedly understated during the Class Period. *See* Opp. 20:19-21:5. The absence of

1 particularized allegations showing that Rackable's financial statements were false in any respect
2 is fatal to plaintiffs' claims. *Morgan v. AXT, Inc.*, No. 04-4362 MJJ, 2005 WL 2347125, at *14-
3 15 (N.D. Cal. Sept. 23, 2005) (rejecting allegation that reserves were fraudulently understated
4 because plaintiff "alleges no contemporaneous facts to support that contention other than the post-
5 Class Period decision to increase the reserves"); *see In re Wet Seal, Inc. Sec. Litig.*, 518 F. Supp.
6 2d 1148, 1162 (C.D. Cal. 2007) (dismissing allegation that assets should have been impaired
7 earlier where complaint "contains no facts showing that [defendant]'s estimates of income from
8 the assets in question . . . were less than their carrying value, or that [defendant]'s estimates were
9 unfounded"); *Plevy v. Haggerty*, 38 F. Supp. 2d 816, 829 (C.D. Cal. 1998) (rejecting allegation
10 that $148 million charge should have been take earlier where defendant's explanation for charge
11 was "undisputed" and plaintiff's argument is "merely a conclusion lacking any factual support").

**D.  The SAC's Allegations Regarding Rackable's Size Do Not Support Any Inference of Scienter**

Although plaintiffs do not reference the Core Business Doctrine by name, they assert that Rackable's "small size" is indicia of scienter and rely on case law applying that doctrine. Opp. 17:17-24 (citing *Backe v. Novatel Wireless, Inc.*, 642 F. Supp. 2d 1169, 1173, 1186 (S.D. Cal. 2009); *In re Impax Labs., Inc. Sec. Litig.*, No. C04-04802 JW, 2007 WL 7022753, at *10 (N.D. Cal. July 18, 2007)). As this Court noted in rejecting identical allegations in the FAC, the Core Business Doctrine permits an inference of scienter only in rare circumstances where the nature of the alleged fraud is of such prominence "that it would be 'absurd' to suggest that management was without knowledge of the matter." Order 19:10-14 (quoting *South Ferry LP v. Killinger*, 542 F.3d 776, 786 (9th Cir. 2008) and citing *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982 (9th Cir. 2008)).

In *Backe*, the court explicitly held that "[d]efendants' positions within the company and the size of the company alone do not establish a strong inference" of scienter. 642 F. Supp. 2d at 1187. The *Backe* court found a strong inference of scienter from allegations regarding the company's size coupled with allegations regarding the cancellation of a deal with a customer accounting for 38% of the company's revenue. *Id.* at 1186-7, 1190. In *Impax*, the court inferred

1  scienter by coupling the company's small size with allegations that the company's main product,
2  which represented 61% of the company's revenues, had significant issues that could threaten the
3  company's viability. 2007 WL 7022753, at *10. The SAC does not allege the existence of any
4  issues or events approaching the magnitude of the allegations in *Backe* and *Impax*. The Court
5  should reject the Opposition's assertion that Rackable's "small size" supports any inference of
6  scienter.

### IV. THE SAC DOES NOT PLEAD LOSS CAUSATION

8  The SAC repeats the same loss causation allegations that were found insufficient in the
9  FAC. As before, plaintiffs assert that the Court should not reach this issue because loss causation
10 is a "matter of proof at trial and not to be decided on a Rule 12(b)(6) motion to dismiss." Opp.
11 23:5-6 (quoting *In re Gilead Sciences Sec. Litig.*, 536 F.3d 1049, 1057 (9th Cir. 2008)). To the
12 contrary, courts are required to evaluate the sufficiency of a complaint's loss causation allegations
13 at the pleadings stage. As the Supreme Court held in *Dura*, a complaint must provide
14 "defendants with notice of what the relevant economic loss might be" and "what the causal
15 connection might be between that loss and the misrepresentation." *Dura Pharm., Inc. v. Broudo*,
16 125 S. Ct. 1627, 1634 (2005). Plaintiffs must plausibly allege that the stock price decline was
17 caused by the earlier misrepresentation and not by factors unrelated to the alleged fraud. *Id*. at
18 1632; *see also Metzler*, 540 F.3d at 1063 (plaintiff must show that "market learned of and reacted
19 to [the] fraud"); *In re Tellium, Inc. Sec. Litig.*, No. Civ. A. 02cv5878FLW, 2005 WL 2090254, at
20 *4 (D.N.J. Aug. 26, 2005) (same). Courts routinely dismiss complaints for failure to allege facts
21 that demonstrate this necessary link. *See Weiss v. Amkor Tech., Inc.*, 527 F. Supp. 2d 938, 947-48
22 (D. Ariz. 2007) (citing cases).

23 The SAC, just as the FAC, must be dismissed because it premises loss causation on
24 nothing more than "a correlation between Rackable's announcement of financial results and a
25 decrease in stock price." Order 20:24-26. The SAC's allegations regarding analysts' reaction to
26 Rackable's stock price decline cannot save it from dismissal. *See In re Omnicom Group, Inc.*
27 *Sec. Litig.*, 597 F.3d 501, 512 (2d Cir. 2010) (analyst commentary is merely a "negative
28 characterization of already public information" and cannot transform disappointing financial

1  results into "corrective" disclosures).  And, contrary to plaintiffs' assertions, the Court does not
2  need to resolve any factual disputes to assess whether the SAC has adequately alleged loss
3  causation.  Opp. 23:5-6.  The SAC's bare allegations of a drop in Rackable's stock price
4  following the disclosure of disappointing financial results does not plead loss causation as a
5  matter of law.  *See In re Intelligroup Sec. Litig.*, 468 F. Supp. 2d 670, 695 (D.N.J. 2006)).

## **CONCLUSION**

This case was brought at the end of the two-year statute of limitations, giving plaintiffs ample time to investigate whether there were facts sufficient to support any violation of the securities laws.  Eighteen months and three complaints later, plaintiffs still cannot allege a sound basis for their claims.  And there are no facts that plaintiffs could plead to overcome the PSLRA Safe Harbor or the explicit cautionary language that accompanied all of Rackable's forward-looking statements.  *See In re Downey*, 2009 WL 2767670, at *16 (dismissing second amended complaint with prejudice where court had "no reason to believe that Plaintiff would be able to remedy its material defects if it was given yet another opportunity to do so").  For these reasons, the SAC should be dismissed with prejudice.

Dated:  July 1, 2010

O'MELVENY & MYERS LLP

By: _____/s/_____
Meredith N. Landy

Attorneys for Defendants Rackable Systems, Inc., Thomas K. Barton, Madhu Ranganathan and Todd R. Ford

- 15 -

REPLY ISO MOTION TO DISMISS SAC
CASE NO. C-09-0222-CW